IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION


HUDSON SPECIALTY INSURANCE          )
COMPANY,                            )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )        Case No. 11-00306-CV-W-SWH
                                    )
BRASH TYGR, LLC, et al.,            )
                                    )
                    Defendants.     )


## ORDER

On March 30, 2012, the Court entered an order denying that portion of Defendants' Motion

for Summary Judgment which sought to preclude the Court from considering insurance coverage

issues on a theory based on the doctrine of collateral estoppel. (See Order, doc. #47) The Court then

held oral argument on Plaintiff's Motion for Summary Judgment and the remaining issues in

Defendants' Motion for Summary Judgment. Based upon the pleadings and arguments of the parties,

the Court concludes that there are no material, undisputed facts with respect to the insurance

coverage issues. For the following reasons, the Court grants Defendants' Motion for Summary

Judgment and denies Plaintiff's Motion for Summary Judgment.

## I. UNDISPUTED FACTS

A.    Facts Relating to the Sonic Drive-In

    1.    Brash Tygr, LLC, is a Missouri Limited Liability Company. (Articles of
      Organization, attached as Exhibit C to doc. #9) (Plaintiffs' Uncontroverted
      Facts (hereinafter "PUF") #10, doc. #9)

    2.    Brash Tygr, LLC, has owned and operated the Sonic Drive-In of Carrollton,
      Missouri since 1994. (G. Roush's Dec. 10, 2010 Affidavit, ¶¶ 5 & 6,
      attached as Exhibit D to doc. #9) (PUF #11, doc. #9)

3.      On August 3, 2009, Brash Tygr, LLC, did business as Sonic Drive-In of Carrollton, Missouri. (Exhibit 1, Finding 5; Exhibit 4, ¶ 5; Exhibit 5, ¶ 5) (Defendants Uncontroverted Facts (hereinafter "DUF") #4, doc. #13)

4.      Roush Investments, Inc. is a Missouri Corporation. (G. Roush Dep. 19:3-16, attached as Exhibit E to doc. #9) (PUF #12, doc. #9)

5.      Roush Investments, Inc. owns a 70% interest in Brash Tygr, LLC. (G. Roush Dep. 21:11-15, 23:12-21, attached as Exhibit E to doc. #9) (PUF #13, doc. #9)

6.      George Roush and Sharon Roush each own 50% of Roush Investments, Inc. (G. Roush Dep., 30:24-31:4, attached as Exhibit E to doc. #9) (PUF #14, doc. #9)

7.      George Roush is the President of Roush Investments, Inc. (Affidavit of G. Roush at ¶ 3, attached as Exhibit D to doc. #9) (PUF #15, doc. #9)

8.      George Roush works at Sonic Drive-In of Carrollton, Missouri, pays the bills owed by Sonic, writes the payroll checks for employees of Sonic, has the authority to sign checks on behalf of Sonic, and authority to hire the general manager of Sonic. (G. Roush Dep. 34:35-35:3, 35:17-37:2, attached as Exhibit E to doc. #9) (PUF #17, doc. #9)

9.      Jeff Ports, through the entity KEP Holdings, Inc. owns a 20% interest in Brash Tygr, LLC. (G. Roush Dep. 20:4-17, 22:21-23, attached as Exhibit E to doc. #9) (PUF #18, doc. #9)

10.     Brandon Roush owns a 5% interest in Brash Tygr, LLC. (G. Roush Dep. 21:11-15, attached as Exhibit E to doc. #9) (PUF #19, doc. #9)

11.     Tyler Roush owns a 5% interest in Brash Tygr, LLC. (G. Roush Dep. 21:11-15, attached as Exhibit E to doc. #9; T. Roush Dep. 67:20-68:7, attached as Exhibit F to doc. #9) (PUF #20, doc. #9)

12.     On August 3, 2009, Sharon Roush was an employee of Brash Tygr, LLC. (Defendant Brash Tygr, LLC's Responses to Plaintiffs' Requests for Admission at ¶ 15, attached as Exhibit 4 to doc. #19)(DUF #16, doc. #10; DUF #17, doc. #19)

13.     On August 3, 2009, Tyler Roush was not an employee of Sonic and received no income from Sonic other than any profits from his 5% ownership share of Brash Tygr. (Exhibit D to doc. #9 at ¶¶ 7-10; Exhibit H to doc. #9 at ¶ 2) (PUF #36, doc. #9)

2

14.	Tyler Roush was last employed by Sonic in 1990. (Exhibit H to doc. #9 at ¶ 3; Exhibit D to doc. #9 at ¶ 10)(PUF #37, doc. #9)

B.	Facts Relating to the Operation Agreement of Brash Tygr, LLC

15.	On August 3, 2009, Tyler Roush was a Managing Member of Brash Tygr, LLC.[1] (Findings of Fact and Conclusions of Law, Miller v. Roush, Case No. 09CR-CC00147-01, Circuit Court of Ray County, April 21, 2011, at Finding 1, 3 and 4 attached as doc. #19-1; Operation Agreement of Brash Tygr, Limited Liability Company, ¶ VII.1, p. 8, attached as Exhibit 2; Defendants' Answer to Plaintiffs' Second Amended Petition in the Underlying Action, ¶ 68, attached as Exhibit 3; Defendant Brash Tygr LLC's Responses to Plaintiffs' Requests for Admission in the Underlying Action, ¶ 1, attached as Exhibit 4; Defendant Tyler Roush's Responses to Plaintiffs' Requests for Admission in the Underlying Action, ¶ 1, attached as Exhibit 5) (DUF #1, doc. #13)

16.	Managing Member is defined by the Operation Agreement as "A Member selected to manage the affairs of the Company under Article VII hereof." (Article I DEFINITIONS, ¶ 31 of the Operation Agreement of Brash Tygr, attached as Exhibit 2 to doc. #19)

17.	Article VII of the Operation Agreement provides in part:

1.	Original Managing Members–The ordinary and usual decisions concerning the business affairs of the Company shall be made by the Managing Members. There shall be three Managing Members who must be Members of the Company.  The initial Managing Members shall be:

Roush Investments, Inc.

---

[1]Plaintiff Hudson controverted DUF #1 through 3, doc. #13, on several bases.  First, Hudson argued it is improper to rely on the findings of fact and conclusions of law from the underlying state court action. (See doc. #16) The Court concurs based upon its prior ruling. (See doc. #47) However, in connection with their motion for summary judgment, defendants also cite to and attach the actual Operation Agreement for Brash Tygr, LLC. (Doc. #19-2)  Hudson states that it "does not controvert that a signature purporting to be that of Tyler Roush appears on the Operation Agreement and that Article VII of the Operation Agreement contains certain language regarding the authority of Managing Members." (Doc. #36 at 6) Accordingly, the Court has modified DUF ##1 through 3, doc. #13, to merely set forth particular terms of the Operation Agreement which are relevant to the Court's legal analysis.

3

Brandon Roush

Tyler Roush

2.　Term of Office as Managing Member–No Managing Member shall have any contractual right to such position.  Each Managing Member shall serve until the earliest of:

2.1　the Dissociation of such Managing Member;

2.2　removal of the Managing Member.

3.　Authority of Members to Bind the Company–The Members hereby agree that only the Managing Members and authorized agents of the Company shall have the authority to bind the Company.  No Member other than a Managing Member shall take any action as a Member to bind the Company, and shall indemnify the Company for any costs or damages incurred by the Company as a result of the unauthorized action of such Member.  Each Managing Member has the power, on behalf of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company, including, without limitation: ...

(Operation Agreement of Brash Tygr, doc. #19-2)

C.　Facts Relating to the August 3, 2009 Accident

18.　On or about August 3, 2009, Tyler Roush was operating a 1996 Lincoln Town Car in Carrollton, Missouri when he was involved in an accident with Lloyd Miller, a pedestrian at the time of the accident.  (First Amended Petition at ¶ 19, attached as Exhibit A to doc. #9) (PUF #3, doc. #9)

19.　On August 3, 2009, shortly before the accident, Tyler Roush made a deposit of Sharon Roush's check, at the request of his mother, to her personal account at Carroll County Trust Company.  (T. Roush Dep. 87:18-88:1, attached as Exhibit F to doc. #9; Polen Dep. 17:13-17, attached as Exhibit I to doc. #9; Suess Dep. 78:21-79:17, attached at Exhibit S to doc. #44-1) (PUF #4, doc. #9)

20.　After leaving Carroll County Trust Company on August 3, 2009, Tyler Roush proceeded to the U.S. Post Office in Carrollton, Missouri to send personal mail for Sharon Roush.  (T. Roush Dep. 84:20-22, 85:12-16, attached as Exhibit F to doc. #9) (PUF #5, doc. #9)

21.　As he was proceeding to the U.S. Post Office in the 1996 Lincoln Town Car, Tyler Roush was involved in the accident with Lloyd Miller.  (T. Roush Dep.

4

88:18-89:22, T. Roush Affidavit at ¶10, attached as Exhibit H to doc. #9;
Seuss Dep. 78:21-79:17, attached as Exhibit S to doc. #44-1) (PUF #6, doc.
#9)

22.    The 1996 Lincoln Town Car operated by Tyler Roush on August 3, 2009 was
       owned by Tyler Roush and Sharon Roush. (Copy of Title for 1996 Lincoln
       Town Car, attached as Exhibit J to doc. #9; S. Roush Dep. at 11:20-12:4,
       attached as Exhibit K to doc. #9) (PUF #7, doc. #9)

D.    Facts Relating to the Bank Bags

23.    Brash Tygr, LLC, used bank bags provided by Carroll County Trust
       Company to make deposits to Brash Tygr, LLC's checking account at Carroll
       County Trust Company. (Hudson's Response to DUF #5, doc. #36)

24.    On occasions before August 3, 2009, a representative of Brash Tygr, LLC,
       periodically went to Carroll County Trust to retrieve the Sonic bank deposit
       bags. (Hudson's Response to DUF #6, doc. #36)

25.    While Tyler Roush was in Carroll County Trust Company on August 3, 2009,
       a bank employee handed him bank deposit bags for Sonic Drive-In of
       Carrollton, Missouri. (Exhibit F to doc. #9 at 87:18-88:12, 81:7-18) (PUF
       #41, doc. #9)

26.    Tyler Roush did not ask for the bank deposit bags when he was in Carroll
       County Trust Company on August 3, 2009. (Exhibit F to doc. #9 at 81:7-18,
       133:12-14) (PUF #42, doc. #9)

27.    On August 3, 2009, Tyler Roush did not make any deposits for Brash Tygr,
       LLC d/b/a Sonic Drive-In of Carrollton, Missouri, at Carroll County Trust
       Company. (Exhibit I to doc. #9 at 12:22-25; Exhibit H to doc. #9 at ¶¶ 7, 8)
       (PUF #43, doc. #9)

28.    Tyler Roush did not go to Carroll County Trust Company for any reason
       related to Sonic Drive-In of Carrollton, Missouri. (Exhibit H to doc. #9 at ¶¶
       7-9, 17; Exhibit F to doc. #9 at 84:20-22, 85:12-19, 87:25-88:1) (PUF #44,
       doc. #9)

29.    No one involved in the operations of Brash Tygr on August 3, 2009 asked
       Tyler Roush to go to Carroll County Trust Company for a business purpose
       of Brash Tygr d/b/a Sonic Drive-In of Carrollton, Missouri. (Exhibit H to
       doc. #9 at ¶ 5)(PUF #45, doc. #9)

30.    Tyler Roush had never picked up bank deposit bags for Sonic Drive-In of

5

Carrollton, Missouri before or after August 3, 2009. (Exhibit F to doc. #9 at 80:25-81:13) (PUF #46, doc. #9)

31. Bank deposit bags from Carroll County Trust Company are not necessary to make deposits. (Exhibit I to doc. #9 at 38:11-16; Exhibit D to doc. #9 at ¶ 17) Carroll County Trust Company uses bank deposit bags as a form of advertising. (Exhibit I to doc. #9 at 38:17-19)(PUF ## 49 and 50, doc. #9)

32. Tyler Roush was planning to deliver the bank deposit bags to his mother, Sharon Roush, a Sonic employee. (PUF #47, doc. #9 and Defendants' response thereto, doc. #10)

33. After leaving Carroll County Trust Company on August 3, 2009, Tyler Roush
proceeded to the U.S. Post office in Carrollton, which was in the exact opposite direction of Sonic and hit pedestrian Lloyd Miller. (Exhibit F to doc. #9 at 133:24-134:5)(PUF #51, doc. #9)

34. On August 3, 2009, Tyler Roush would have made the trip to Carroll County Trust Company and to the Post Office in Carrollton at the same time and in the same manner whether he had been given the bank bags at Carroll County Trust Company or not. (Exhibit H to doc. #9 at ¶¶ 9, 12)(PUF #55, doc. #9)

E. Facts Relating to the Insurance Policy

35. On August 3, 2009, plaintiff Hudson Specialty Insurance Company (hereinafter "Hudson") had in force a commercial general liability policy issued to the Sonic Insurance Advisory Trust, Policy No. HQSR020001 (hereinafter "the Sonic Policy"). (DUF #26, doc. #19)

36. The Sonic Policy contained a "NAMED INSURED ENDORSEMENT" under which all licensed Sonic Drive-In franchisees who were enrolled members of the Sonic Insurance Advisory Trust and had locations on file with the company were included as named insureds according to the term of the endorsement. (DUF #27, doc. #19)

37. Hudson issued a Sonic Restaurant Program Confirmation of Coverage to Brash Tygr, LLC, listing it as a named insured ("Confirmation of Coverage"). (DUF #28, doc. #19)

38. The Sonic Policy enumerates the following duties owed by an insured:
   **2. Duties in The Event Of Occurrence, Offense, Claim Or Suit**

6

* * *

       b.      If a claim is made or "suit" is brought against any insured, you must:

             (1)     Immediately record the specifics of the claim or "suit" and the date received; and

             (2)     Notify us as soon as practicable.

             You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

       c.      **You and any other involved insured must:**

             (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

             (2)     Authorize us to obtain records and other information;

             (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

             (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

     (DUF #29, doc. #19)

39.     The Sonic Policy includes a "HIRED AND NON-OWNED AUTO LIABILITY" endorsement that provides, in relevant part:

     It is agreed that subject to the terms of the policy not expressly modified herein, the following will apply with respect to hired and non-owned auto liability coverage provided by this endorsement.

     A.     HIRED AUTO LIABILITY
     We will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

7

B.    NON-OWNED AUTO LIABILITY

We will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the use of a "nonowned auto" by any person other than you in the course of your business.

* * *

D.    For the purposes of this endorsement only, WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

1.    You.
2.    Any other person using a "hired auto" with your permission.
3.    With respect to a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business.
4.    Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs 1., 2. or 3. above.

None of the following is an insured:

1.    Any person engaged in the business of his or her employer with respect to "bodily injury" to any "coemployee" of such person injured in the course of employment,
2.    Any partner of (sic) executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household,
3.    Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate,
4.    The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of such owner or lessee,
5.    Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

* * *

G.    For the purposes of this endorsement only, the following definitions are added to the DEFINITIONS section:

1.    "Auto business" means the business or occupation of selling,

8

repairing, servicing, storing, or parking "autos."

    2.    "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire rent or borrow from any of your "employees," your partners, or your executive officers or members of their households.

    3.    "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees," your partners or your executive officers, or members of their households but only while used in your business or personal affairs.

(DUF #31, doc. #19)

F.    <u>Facts Relating to the Underlying Lawsuit and Notice</u>

40.    Lloyd Miller and Nancy Miller, as his spouse (hereafter "Millers"), filed their First Amended Petition in the Circuit Court of Carroll County, Missouri, Case No. 09CR-CC00147 (hereafter "Underlying Action"), on or about June 15, 2010, for personal injuries sustained by Lloyd Miller in the accident, punitive damages and loss of consortium. (First Amended Petition, attached as Exhibit A to doc. #9) (PUF #27, doc. #9)

41.    The First Amended Petition in the Underlying Action asserted claims against Brash Tygr, LLC, Tyler Roush, George Roush, Sharon Roush, Roush Investments, Brandon Roush and Jeff Ports. (First Amended Petition, attached as Exhibit A to doc. #9) (PUF #28, doc. #9 and Response to PUF #28, doc. #9)

42.    The First Amended Petition in the Underlying Action alleges that, prior to the accident, Tyler Roush was at Carroll County Trust Company conducting business on behalf of Sonic and, as a result, he was acting as an agent of defendants Brash Tygr, Roush Investments, Jeff Ports and Brandon Roush. (First Amended Petition, at ¶¶ 44-53, attached as Exhibit A to doc. #9) (PUF #29, doc. #9)

43.    On March 23, 2010, Hudson sent the Sonic parties a reservation of rights letter. (Reservation of Rights Letter dated 3/23/10, attached as Exhibit 10 to doc. #19) (DUF #35, doc. #19)

44.    Hudson sent another reservation of rights letter to the Sonic parties, including Brash Tygr, LLC, on July 29, 2010. (Reservation of Rights Letter dated 7/29/10, attached as Exhibit 11 to doc. #10) (DUF #36, doc. #19)

9

45. Hudson hired Jeffrey Suess to represent Brash Tygr with regard to claims being brought by Lloyd and Nancy Miller against Sonic of Carrollton. (Suess Dep. 7:1- 8:11, attached as Exhibit 1 to doc. #45-1) (DUF #56, doc. #45-1)

46. Jeffrey Suess was not involved in coverage issues on behalf of Hudson or Brash Tygr. (Suess Dep. 41:3-42:2, attached as Exhibit 1 to doc. #45-1) (DUF #57, doc. #45-1)

47. Hudson was aware that Jeffrey Suess could not be involved in insurance coverage related issues while representing his clients in the Underlying Action. (DUF #58, doc. #45-1)

48. The First Amended Petition in the Underlying Action alleges that, prior to the accident, Tyler Roush was at Carroll County Trust Company conducting business on behalf of Sonic and, as a result, he was acting as an agent of defendants Brash Tygr, Roush Investments, Jeff Ports and Brandon Roush. (First Amended Petition, at ¶¶ 44-53, attached as Exhibit A to doc. #9) (PUF #29, doc. #9)

49. On April 19, 2010, Jeffrey Suess sent a letter to Hudson analyzing whether Tyler Roush was acting as an agent of Sonic for purposes of liability in the underlying action. (Suess Dep. 40:19-41:2, attached as Exhibit 1 to doc. #45-1) (DUF #59, doc. #45-1)

50. On October 5, 2010, the Millers dismissed Brash Tygr from the Underlying Action. (Brash Tygr Dismissal, attached as Exhibit B to doc. #9) (PUF #30, doc. #9)

51. On October 5, 2010, the Millers filed a Motion for Leave to File a Second Amended Petition. The proposed Second Amended Petition attached to this motion did not name Brash Tygr as a defendant. (Doc. #36-6 at 1-21)

52. Hudson never withdrew authority for Mr. Suess to represent Brash Tygr. (Suess Dep. 46:25-47:12, attached as Exhibit 1 to doc. #45-1) (PUF #66, doc. #45-1)

53. On December 16, 2010, Jeffrey Suess filed a motion for summary judgment in the Underlying Action alleging that Tyler Roush was not acting as an agent of Brash Tygr when he ran over Lloyd Miller. (Suess Dep. 16:2-16:11, 83:23-84:7, attached as Exhibit 1 to doc. #45-1; Case No. 09CR-CC00147 Docket Sheet, attached as Exhibit O to doc. #9) (DUF #59, doc. #45-1)

54. On December 21, 2010, the Millers filed their Second Motion for Leave to File a Second Amended Petition with Suggestions in Support and a proposed

Second Amended Petition attached as an exhibit. (Second Motion for Leave File a Second Amended Petition, attached as Exhibit N to doc. #9) (PUF #31, doc. #9)

55. The proposed Second Amended Petition attached to the December 21, 2010 motion would have added Brash Tygr, LLC as a named defendant. (Doc. #9-16)

56. Jeffrey Suess was mailed the proposed Second Amended Petition on December 20, 2010. (Certificate of Service, attached as Exhibit 4 to doc. #10) (DUF #28, doc. #10)

57. The court in the Underlying Action never granted leave to file the Millers' Second Amended Petition. (Case No. 09CR-CC00147 Docket Sheet, attached as Exhibit O to doc. #9; Notice of Filing of Second Amended Petition, attached as Exhibit 3 to doc. #10) (PUF #33, doc. #9)

58. The proposed Second Amended Petition, attached to the Second Motion for Leave to File a Second Amended Petition, asserted, as did the First Amended Petition, that Tyler Roush was acting as the agent of Brash Tygr at the time he struck Lloyd Miller. (Second Amended Petition at ¶ 82, attached to Second Motion for Leave to File a Second Amended Petition, attached as Exhibit 8 to doc. #19) (DUF #40, doc. #19)

59. In the Underlying Action, plaintiffs filing a second motion to file a second amended petition bringing Brash Tygr back into the case did not change Jeffrey Suess' representation of Brash Tygr. (Suess Dep. 76:11-77:5, attached as Exhibit 1 to doc. #45-1) (DUF #67, doc. #45-1)

60. On January 14, 2011, Jeffrey Suess prepared and submitted a mediation statement that stated he represented the "'Sonic' defendants, specifically Tyler Roush (only as owner of Sonic), Roush Investments, Inc., Brandon Roush, Jeff Ports and Brash Tygr, LLC." The letter to the mediator stated in part: "[t]he plaintiffs have recently filed a proposed Amended Petition bringing Brash Tygr back into the lawsuit. Brash Tygr is the proper defendant on behalf of Sonic restaurants. The individual owners of Brash Tygr do not have personal liability in this case." (Mediation Statement, doc. #10-7) (DUF #29 and 31, doc. #10 at 27 and Plaintiffs' Response to DUF #29, doc. #16)

61. There was a representative of Hudson present at the mediation. (G. Roush Declaration ¶¶ 11-14, attached as Exhibit 8 to doc. #10)(DUF # 30, doc. #10 at 27)

62. The attorney for the plaintiffs in the Underlying Action sent a settlement

11

demand to Jeffrey Suess on February 23, 2011, that specifically discussed Brash Tygr's liability in the Underlying Action. (Letter from L. Benjamin Mook to Jeffrey Suess dated 2/23/2011, attached as Exhibit 12 to doc. #13) (DUF #35, doc. #13 at 28)

63.     On February 23, 2011, Dean Nash wrote to Daniel Peterson of Gallagher Bassett Services demanding that the case be settled for the Hudson policy limits. Further, Mr. Nash advised "[e]ither settle this case or Brash Tygr, LLC, Tyler Roush, Sharon Roush, Roush Investments, Inc., Brandon Roush, KEP Holdings, LLC, and Jeff Ports will reject the defense you are providing and handle it as they see fit." (Letter to Gallagher Bassett from Dean Nash dated 2/23/11, attached as Exhibit 17 to doc. #19) (DUF #51, doc. #19; doc. #19-17)

64.     Hudson responded to Mr. Mook's February 23, 2011, settlement demand on March 2, 2011 stating in part: "[i]nvestigation and discovery to date reveal that Tyler Roush was operating his own vehicle at the time of the accident, and was not carrying out the business of Sonic at the time of the accident ..." While we have decided not to withdraw any reservation of rights letter we remain open to exploring settlement possibilities ..." (Letter from Greg Edward to L. Benjamin Mook dated 3/2/11, attached as Exhibit 18 to doc. #19) (DUF #52, doc. #19; doc. #19-18)

65.     E-mail correspondence between Aaron Mandel and Dean Nash included the following:

On Tuesday, February 22, 2011, Aaron Mandel wrote Dean Nash the following:

> As we discussed, Hudson has decided not to withdraw its reservation of rights. If you have any questions, please do not hesitate to contact me.

Dean Nash responded to Aaron Mandel with a copy to Jeff Brinker on February 23, 2011 as follows:

> Aaron,
>
> I wanted to confirm that the reservation of rights continues to apply to Brash Tyger as well as the other defendants. Please let me know if that is correct.

Aaron Mandel responded on February 24, 2011:

> Dean,

12

Brash Tygr is no longer a party to the suit. They were dismissed out several months ago. The reservation of rights letter sent with regard to the Amended Petition was not withdrawn and the defenses would apply if the same claims were filed. Of course if the claims against Brash Tygr changed, they would need to be looked at in light of the policy language.

(DUF #54, doc. #19; doc. #19-25)

66.     Brash Tygr rejected defense by Hudson under a reservation of rights on March 11, 2011. (Letter to Jeffrey Suess from Dean Nash dated 3/ 11/11, attached as Exhibit 22 to doc. #19) (DUF #55, doc. #19)

67.     The Ray County Circuit Court docket sheet reflects that Dean Nash entered an appearance on March 11, 2011, and on that same day filed a withdrawal of the December 16, 2010 Motion for Summary Judgment. (Doc. #9-17)

68.     Jeffrey Suess continued to represent the Sonic parties after Brash Tygr was dismissed from the Underlying Action and up until at least March 14, 2011, when Mr. Suess moved to withdraw from the Underlying Action. (Suess Dep. 7:16-8:2, 47:3-20, attached as Exhibit 1 to doc. #45-1; Motion to Withdraw, attached as Exhibit 9 to doc. #10) (DUF #27, doc. #10)

69.     On March 14, 2011, Jeffrey Suess filed a motion for leave to withdraw his firm's appearance on behalf of Tyler Roush, Brandon Roush, Jeff Ports and Roush Investments, Inc. stating: "These parties have obtained separate counsel who has entered an appearance on their behalf and who has instructed the undersigned to withdraw." (Doc. #10-9)

70.     On or about March 30, 2011, the Millers and Brash Tygr, LLC; Sonic Drive In of Carrollton, Missouri; Tyler Roush; George Roush; Sharon Roush; Brandon Roush; Roush Investments, Inc., Jeff Ports; and KEP Holdings executed an agreement made pursuant to § 537.065 RSMo (hereinafter "537.065 Agreement"). (537.065 Agreement, attached as Exhibit K to doc. #36) (PUF #23, doc. #36 at 28; doc. #36-11)

71.     Brash Tygr, LLC filed its Answer to the Second Amended Petition on April 20, 2011, admitting all allegations asserted against it. (Defendants' Answer to Plaintiffs' Second Amended Petition, attached as Exhibit P to doc. #9) (PUF #34, doc. #9)

72.     The docket sheet for the Ray County Circuit Court reflects that the Second

13

Amended Petition was not filed by counsel for plaintiffs until April 21, 2011.[2] (Doc. #9-17 at 6)

73.     On April 22, 2011, the court in the Underlying Action entered judgment against Brash Tygr for $5,300,000.00 in compensatory damages and for $500,000.00 in punitive damages. (Judgment, attached as Exhibit Q to doc. #9) (PUF #35, doc. #9)

74.     The court in the Underlying Action, in addition to entering a Judgment, also entered Findings of Fact and Conclusions of Law on April 22, 2011. (Findings of Fact and Conclusions of Law, Miller v. Roush, Case No. 09CR-CC00147-01, Circuit Court of Ray County, Missouri, attached as Exhibit 1 to doc. #10) (DUF #37, doc. #10)

## II. DISCUSSION

A.     Was Tyler Roush Acting in the Course of Brash Tygr's Business?

Defendants rely on the Hired and Non-Owned Auto Liability Endorsement to support their coverage claims. (Doc. #19 at 22)  The policy provides coverage for sums the insured becomes obligated to pay because of bodily injury "arising out of the use of a 'non-owned auto' by any person other than you in the course of your business."  (UF #39 and doc. #19 at 22)  Defendants argue that if the auto which struck Lloyd Miller, which Brash Tygr did not own, was being used "in connection with" and /or "in the course of" Brash Tygr's business, Hudson must pay under the policy. (Doc. #19 at 23) Defendants contend that even Hudson concedes that if Tyler Roush was operating the 1996 Town Car in the course of Brash Tygr's business when he struck Lloyd Miller, then the policy provides coverage.  (Doc. #19 at 22)

In support of their claim that Hudson is obligated to pay under the policy, defendants point to undisputed facts such as Tyler Roush had been asked by a bank employee to return Sonic bags to

_____

[2]The Notice of Filing of Second Amended Petition on April 21, 2011 stated that plaintiffs' counsel had obtained the written consent of counsel for the defendants to the filing of the Second Amended Petition.  (Doc. #10-3)

14

his mother Sharon Roush, a Sonic employee, and he was taking the bank bags to his mother, a Sonic employee, after he had stopped at the post office on a personal errand. (UF ##25, 32, 33) On other occasions a representative of Brash Tygr had gone to the Carroll County Trust Company to pick up bank bags. (UF #24) The auto which struck Mr. Miller was not owned by Brash Tygr. (UF #22) Tyler Roush was a Managing Member of Brash Tygr, and therefore, had the power on behalf of the company to do all things necessary or convenient to carry out the business of the company. (UF ## 15, 17) A judgment has been awarded against Brash Tygr in the lawsuit brought by the Millers based upon injuries Lloyd Miller sustained after being hit by an auto being driven by Tyler Roush. (UF ## 73, 74)

Hudson counters defendants' argument by contending that for Brash Tygr to be responsible for the acts of Tyler Roush, the existence of a master-servant relationship must be established. (Doc. #36 at 35) Further, Hudson maintains that defendants must show that Brash Tygr, as the principal, consented (expressly or impliedly) to Tyler Roush acting on behalf of Brash Tygr and that Tyler Roush was subject to Brash Tygr's control. (Id.)

Citing The Bar Plan v. Cooper, 290 S.W.3d 788, 792 (Mo. Ct. App. 2009), Hudson contends that the principal must intend that the agent act for him, and the agent must intend to accept the authority and act on it. (Doc. #36 at 35) Cooper involved a dispute between two attorneys and their insured, The Bar Plan Mutual Insurance Company ("TBP"). 290 S.W.3d at 790. The background of that case differs significantly from the facts before this Court. In Cooper, TBP provided a defense to the two attorneys in a lawsuit alleging fraud and a conspiracy to defraud. Id. After a jury finding against them, the attorneys appealed. The attorney hired by TBP to defend them at trial advised his clients that he was not an experienced appellate attorney and recommended they find another attorney

15

to assist with the appeal. The attorneys hired another lawyer to handle the appeal intending to seek reimbursement from TBP, but they never informed TBP of their intention. Id. at 791. The insurance contract provided for payment of defense fees in two situations: (1) fees charged by a lawyer designated by TBP to defend; and (2) fees charged by a lawyer designated by an insured to defend a claim with the written consent of TBP. Id. The insured attorneys had not obtained the written consent of TBP to hire the appellate counsel for the appeal. However, they claimed that the defense counsel hired by TBP gave them the impression that TBP approved of and would pay for the services of appellate counsel, and thus, TBP was responsible under an agency theory. Id. In concluding that trial counsel was not an authorized agent of TBP, the appellate court pointed to the insurance contract itself which specifically provided: "Defense counsel are not agents of [TBP]." Id. at 792. The court also rejected a claim that the actions of defense counsel gave the two attorneys a reasonable belief that he had actual authority to change the written provisions of the contract. Id. at 793.

Here, defense counsel rely on the Operation Agreement, Brash Tygr's status as a limited liability company, and Tyler Roush's position as a Managing Member of Brash Tygr in support of their position. A limited liability company can act only through its agents and the Operating Agreement can provide actual authority for a managing member's acts. In Pittman Place Development, LLC v. Howard Investments, LLC, 330 S.W.3d 519 (Mo. Ct. App. 2010), at issue was whether an individual named as an initial manager in the Operating Agreement of an LLC had authority to borrow $525,000.00 on behalf of the LLC. Id. at 524. The Manager of the LLC provided a copy of the Operating Agreement to the bank as proof of his borrowing authority. Unbeknownst to the bank, the Manager had altered that section of the Operating Agreement authorizing a manager to encumber property from the original limit of $50,000.00 to $750,000.00 Id. Because the actual

16

Operating Agreement gave managing members authority to enter into transactions not exceeding $50,000.00, the court noted that the manager lacked actual authority to enter into the loan agreement at issue. Id. at 526. Thus, the issue before the court was whether the individual manager had apparent authority to execute the loan documents and borrow the money on behalf of the LLC. Id. at 526-27. In concluding that the manager of Pittman had apparent authority to enter into the loan agreement on behalf of the LLC, the court relied on the language of the Operating Agreement vesting the management and control of the business and affairs of the LLC exclusively in the managers. Id. at 528.

In this case, the Operation Agreement named Tyler Roush as a Managing Member of Brash Tygr and gave Managing Members the authority to do all things "necessary or convenient to carry out the business and affairs of the Company...." (UF #17) Hudson argues that no evidence demonstrates that Tyler Roush intended to or was operating under an agreement signed some fifteen years earlier. However, the agreement has specific provisions for the disposition of membership interests (Article XI) and for Dissociation of a Member (Article XII). (Doc. #19-2) There is no evidence that Tyler Roush was no longer a Managing Member of the LLC. During oral argument, counsel for Hudson argued that before Tyler Roush could be acting in the course of Brash Tygr's business there would have to be some request by the company or an acknowledgment by the company that he was on company business. (Doc. #58 at 22-23) In the Court's view, this argument is derived from traditional principles of respondeat superior and agency and should not be applied to an individual who is an owner and managing member of a limited liability company.

Whether Tyler Roush intended to act pursuant to the written Operation Agreement is not the question, the question is whether he was performing an act necessary or convenient for the LLC, acts

which he was authorized to do without any request by other employees or managing members of the LLC. Clearly, taking bank deposit bags to an employee of Sonic is an act for the convenience of the LLC. As a Managing Member of the LLC, he did not have to seek permission from the principal or obtain approval for his actions.

Citing Corp v. Joplin Cement Co., 337 S.W.2d 252 (Mo. 1960), defendants contend that the fact that Tyler Roush did not go to the bank with the specific intent to pick up the Sonic bank deposit bags or the fact that he had a concurrent purpose of going to the post office does not change the fact that he was also performing an act for the convenience of Brash Tygr. (Doc. #19 at 24-25) Thus, defendants contend that the intervening personal errand to the post office does not foreclose liability under the policy. Hudson, however, maintains that the dual purpose doctrine, relied upon by defendants, has no application as it applies only when an employee is traveling to or from work on his way to or from home. (Doc. #36 at 38)

The cases cited by Hudson[3] stand for the proposition that an employer is not liable under the doctrine of respondeat superior for an employee's negligent operation of a motor vehicle on his journey to or from work. However, the dual purpose doctrine permits a finding that an employee was acting within the course of his employment where there are both business and personal purposes for a trip. The Court in Corp v. Joplin Cement Co., 337 S.W.2d 252, 255 (Mo. 1960), rejected an argument that the primary purpose of the trip must be for the employer's business and found that it is sufficient if a business motive was a concurrent cause of the trip. Thus, in applying the dual purpose doctrine, the court need not weigh the business and personal motives to determine which is

---

[3]These cases include Fackrell v. Marshall, 490 F.3d 997, 1000-01 (8th Cir. 2007); Tuttle v. Muenks, 964 S.W.2d 514, 517-19 (Mo. Ct. App. 1998); Logan v. Phillips, 891 S.W.2d 542, 544 (Mo. App. 1995). (See doc. #36 at 38)

18

dominant.  Id.

In the Court's view, the cases discussing employers' liability under the coming and going rule, as well as the dual purpose doctrine, while instructive are not controlling.  This is not a situation where an employer's liability is being evaluated under the doctrine of respondeat superior and its various exceptions. At issue, is the interpretation of an insurance policy insuring a limited liability company.  Here, liability is not premised on the concept of respondeat superior or traditional principles of agency, but rather Tyler Roush's status as a Managing Member of a Limited Liability Company.  The rationale of the cases discussing the dual purpose doctrine provides support for defendants' argument that the fact that Tyler Roush was intending to stop at the post office on a personal errand prior to delivering the bank bags to a Sonic employee does not preclude a finding that Tyler Roush was acting in the course of Brash Tygr's business when the accident occurred.

B.    Was There a Material Breach of the Insurance Policy's Notice Provisions?

Hudson argues that even if there were coverage under the Hired and Non Owned Automobile Endorsement, Brash Tygr breached its duty under the policy to  provide notice to Hudson of the Second Amended Petition thereby relieving Hudson of any obligations under the policy.  (See doc. #9 at 23-29 and doc. #36 at 39-43)  It is undisputed that the policy provision required that the insured see that Hudson receives "written notice of the claim or suit as soon as practicable."  (UF #38) Further, the Policy required that the insured immediately send Hudson "copies of any demands, notices, summonses or legal papers received in connection with the claim or suit." (UF #38) Citing Anderson v. Slayton, 662 S.W.2d 575 (Mo. Ct. App. 1983), Hudson argues that where the failure to notify the insured is unexcused, as in this case, prejudice is presumed.  (Doc. #9 at 23-24) Defendants maintain that because Hudson had actual notice of the Second Amended Petition, Brash

Tygr did not breach its duty under the policy and, in any event, Hudson was not prejudiced. (Doc. #19 at 26)

Neither side disputes that the notice requirements of an insurance policy are valid and enforceable. See Johnston v. Sweany, 68 S.W.3d 398, 401 (Mo. 2002)(notice provisions of insurance policy are valid and enforceable).[4]  Rather, the parties differ over the legal significance of the undisputed facts.  A review of those facts is essential to a discussion of the applicable legal principles.

Hudson, through Gallagher Bassett Services, the third party claims administrator for Hudson, sent a reservation of rights letter to Tyler Roush, Roush Investments, Inc., Brandon Roush and Jeff Ports on March 23, 2010, agreeing to defend under full reservation of rights, the lawsuit filed by Lloyd Miller against these defendants in the Circuit Court of Carroll County, Missouri. (See UF #43; doc. #19-10)  In that first correspondence, Hudson indicated that its "investigation has shown the existence of facts which would indicate that Mr. Tyler Roush was not in the course of business of Brash Tygr, LLC or Sonic Drive In of Carrollton at the time of the accident." (Doc. #19-10 at 3)

Subsequently, on July 29, 2010, Gallagher Bassett Services sent an acknowledgment of receipt of the first amended petition in the Miller lawsuit and agreed to defend Tyler Roush, Roush Investments, Inc., Brandon Roush, Brash Tygr, LLC and Jeff Ports as to the allegations of the first amended petition again under a full reservation of rights. (UF #44; doc. #19-11)  Again, the

_____

[4]In Johnston v. Sweany, unlike this case, the insured never made a claim under the insurance policy nor did he provide notice of the action or forward any papers concerning the lawsuit to the insurer.  The insurer did not learn of the lawsuit until after the insured had confessed judgment and assumed liability.  Upon these facts, the court found that the insurer had demonstrated that it had been prejudiced by the insured's non-compliance with the policy provisions.  68 S.W.3d at 402-03.

correspondence indicated there were "questions with respect to whether there is coverage for the vehicle as a 'non-owned auto' as the vehicle was not being used in the course of business of Brash Tygr, LLC or Sonic Drive In of Carrollton at the time of the accident." (Doc. #19-11 at 4)

Thereafter, Jeffrey Suess was hired by the insurance company to represent Brash Tygr and the other named defendants with regard to the Millers' claims. (UF #45) On October 5, 2010, the Millers dismissed Brash Tygr from their lawsuit. (UF #50) On the same date that Brash Tygr was dismissed from the lawsuit, the Millers filed a Motion for Leave to File a Second Amended Petition which petition did not name Brash Tygr as a defendant. (UF #51) On December 16, 2010, Jeffrey Suess filed a motion for summary judgment in the Miller action alleging that Tyler Roush was not acting as an agent of Brash Tygr at the time of the accident. (UF #53)

The October 5, 2010 motion by the Millers to file a second amended petition was never ruled, and on December 21, 2010, the Millers filed a Second Motion for Leave to File a Second Amended Petition seeking leave to file the attached second amended petition. (UF #54) The proposed second amended petition attached to the December 21, 2010 motion would have added Brash Tygr as a defendant in the lawsuit. (UF #55)

While the second motion for leave to file a proposed second amended petition was pending, the case went to mediation. Jeffrey Suess prepared and submitted a mediation statement in which he indicated that he represented the "Sonic" defendants–specifically Tyler Roush (only as owner of Sonic), Roush Investments, Inc., Brandon Roush, Jeff Ports and Brash Tygr, LLC. (UF #60) The correspondence with the mediator recognized that there was a pending motion to add Brash Tygr into the lawsuit as a defendant. (UF #60) A representative of Hudson was present at the mediation. (UF #61)

On February 23, 2011, Dean Nash, personal counsel for the defendants in the Miller lawsuit wrote Gallagher Bassett Services demanding that the case be settled or his clients will "reject the defense you are providing and handle it as they see fit." (UF #63) In e-mail correspondence on February 23, 2011, personal counsel for the defendants in the Miller litigation wrote seeking confirmation from Hudson that the reservation of rights "continues to apply to Brash Tygr as well as the other defendants." (UF #65) In response, Aaron Mandel, on behalf of Hudson, indicated that Brash Tygr had been dismissed and was no longer a party to the suit. However, the e-mail went on to state that "[t]he reservation of rights letter sent with regard to the Amended Petition was not withdrawn and the defenses would apply if the same claims were filed. Of course if the claims against Brash Tygr changed, they would need to be looked at in light of the policy language." (UF #65)

Defendants point out that the affidavit of Greg Edwards, Assistant Vice-President of Claims for Hudson, never claims that Hudson did not know the status of the Second Amended Petition, but carefully states that "Brash Tygr" did not tender the Second Amended Petition to Hudson for defense and that "Brash Tygr" did not make Hudson aware of the renewed suit against it. (See Affidavit of Greg Edwards, doc. #9-20 at ¶¶ 9, 10)

Whether Brash Tygr's failure to tender the Second Amended Petition to Hudson once it was formally filed violated the notice provisions of the policy is immaterial. It is clear from the undisputed facts that Hudson cannot show that it was prejudiced by the alleged failure of Brash Tygr to formally tender the defense of the Second Amended Petition.

When an insured fails to give the requisite notice, an insurer may assert that the failure to give notice is a material breach of the contract. However, an insured or one standing in the shoes of the

insured will not be barred from recovery based upon the breach of the notice requirement unless the insurer can show it has been prejudiced by the insured's non-compliance with the policy provisions. See Inman v. St. Paul Fire & Marine Ins. Co., 347 S.W.3d 569, 580 (Mo. Ct. App. 2011). See also Tresner v. State Farm Ins. Co., 913 S.W.2d 7, 11 (Mo. 1995)(Missouri courts have consistently placed burden on insurers to demonstrate that they are prejudiced by receiving late notice of claims before allowing companies to avoid coverage under policy because of late notice).

In a series of cases, Missouri courts have held that where an amended petition is filed setting out new causes of action, the insurer has a right to determine whether the new claim is within its coverage and to reexamine its decision as to whether to participate in the defense against the new claim. See Inman v. St. Paul Fire & Marine Ins. Co., 347 S.W.3d 569 (Mo. Ct. App. 2011); Rocha v. Metropolitan Property & Cas. Ins. Co., 14 S.W.3d 242 (Mo. Ct. App. 2000); Dickman Aviation Servs., Inc. v. U.S. Fire Ins. Co., 809 S.W.2d 149, 150 (Mo. Ct. App. 1991).

The issues in this case are closely aligned with those in the case of Truck Insurance Exchange v. Prairie Framing, LLC, 162 S.W.3d 64 (Mo. Ct. App. 2005). In that case, there was an underlying wrongful death action against a driver and his employer, Prairie Framing, who was insured by Truck Insurance Exchange (TIE). TIE filed a declaratory judgment action seeking a determination it had no duty to defend. Id. at 69. Prairie Framing assumed control of the action and a four million dollar judgment was entered against it. TIE argued that Prairie Framing breached its duty to cooperate before TIE had a chance to defend the Second Amended Petition.[5] In rejecting TIE's arguments, the

_____

[5]Specifically, TIE contended that Prairie Framing breached its duty in four ways: consenting to the filing of the amended petition without giving TIE time to consider the effect of the amendment; entering into a 537.065 agreement before seeking a defense from TIE of the allegations in the Second Amended Petition; not informing TIE of the settlement negotiations; and stipulating to liability. Id. at 87.

court noted that the negligent supervision theory had been present from the beginning, there were no new theories raised in the amended petition and that TIE had an opportunity, but chose not to defend. Id. at 91. TIE had relied on cases such as Dickman and Rocha to support its claim that the failure to timely provide notice of the amended petition precluded coverage contending that the fact that these prior cases involved amended petitions raising new theories of liability was irrelevant. The court of appeals rejected this argument stating: "[t]he holding in each of those cases is specifically based on the fact that the amended petition alleged *new* theories of negligence that the insurer was never aware of until after a judgment was entered on the new "surprise" theory or theories." Id. at 91.

Here, no new theories of liability against Brash Tygr are alleged in the Second Amended Petition. The Court has compared the First Amended Petition which named Brash Tygr as a defendant, Ex. A, doc. #9-1 at 2-15, with the proposed Second Amended Petition attached to the December 21, 2010 motion, Ex N, doc. #9-16 at 7-28, and the Second Amended Petition which was filed on April 21, 2011,[6] Ex. P, doc. #9-18 at 3-17. While some differences exist between the documents, the causes of action against Brash Tygr remain unchanged. Brash Tygr is sued under theories of negligence and negligence per se. Likewise, all of the petitions set forth the same general allegations of agency with only a few minor differences. For example, plaintiffs allege that immediately before the accident, Tyler Roush had been to the bank to conduct banking business on behalf of Sonic (Proposed Second Amended Petition at ¶ 39) or Tygr Brash (Second Amended Petition at ¶ 72).[7]

_____

[6]Hudson has attached as Ex. P to doc. #9, Defendants' Answer to Plaintiffs' Second Amended Petition. The answer sets forth every paragraph of the Second Amended Petition and the defendants' responses thereto.

[7]The most significant difference between the final petition and the earlier ones is that the Second Amended Petition filed April 21, 2011, named as defendants only Brash Tygr, LLC, and

In this case, Hudson had an opportunity to determine whether to offer an unconditional defense against the allegations plead in the final petition that was filed. The position first set forth in March 2010, that Tyler Roush was not acting in the course of business for Brash Tygr or the Sonic Drive-In, continued to be the position of Hudson throughout the course of the litigation. The e-mail exchange between Dean Nash and Aaron Mandel in February of 2011 documented that if the same claims were refiled against Brash Tygr the reservation of rights letter would apply as it had never been withdrawn. (UF #65) Echoing the case law, Aaron Mandel, on behalf of Hudson, noted that if the claims against Brash Tygr changed, then they would need to be examined in light of the policy. (UF #65) There were no changes in the claims, negligence and negligence per se, against Brash Tygr. Hudson has failed to offer any facts suggesting that it was prejudiced by its failure to be notified that the proposed second amended petition had actually been filed.

Hudson seems to suggest that prejudice is demonstrated by the substantial judgment obtained against Brash Tygr. (Doc. #9 at 25-26) However, Hudson fails to point out how immediate notice of the Second Amended Petition would have eliminated or reduced the judgment. The case law cited in the Court's initial order, doc. #47, clearly establishes that once an insured rejects an offer to defend under a reservation of rights, the insured is entitled to take control of the lawsuit and the insurance company cannot intervene, even to raise coverage questions. Hudson was provided with notice of the proposed second amended petition and made clear that its reservation of rights would continue as long as the claims against Brash Tygr were unchanged. The defendants in the Miller litigation had rejected the defense with reservation of rights and taken control of the litigation as they were entitled

---

George, Sharon and Tyler Roush. Further, Count III, which is in the First Amended Petition and the proposed Second Amended Petition and sets forth a cause of action for negligent entrustment against Sharon Roush, only, was deleted from the Second Amended Petition filed April 21, 2011.

to do under the case law.

Ordinarily, the questions as to whether notice was given within a reasonable time as well as whether prejudice resulted from late notice would be questions for the jury. However, where the facts are undisputed, as they are here, it becomes a question of law for the Court. See Fireman's Fund Ins. Co. v. ACC Chem. Co., 538 N.W.2d 259, 265 (Iowa 1995). Moreover, this is a case in which both sides sought summary judgment arguing that there were no undisputed facts, a position that was reiterated at the argument on the summary judgment motions. (See Tr., doc. #58, at 17) No facts have been put forth by either side which create factual issues for jury resolution.

### III. CONCLUSION

The Court previously granted Plaintiff Hudson Specialty Insurance Company's Motion for Summary Judgment, doc. # 8, in part, and denied Defendants' Motion for Summary Judgment, doc. # 18, in part, finding that collateral estoppel did not preclude relitigation of insurance coverage issues. With respect to the insurance coverage issues, for the reasons set forth herein, the Court finds that the insurance policy at issue provides coverage for the injuries sustained by Lloyd Miller in an accident caused by Tyler Roush while operating a 1996 Lincoln Town Car in Carrollton, Missouri, on August 3, 2009. Therefore, it is

ORDERED that, as to the insurance coverage issues, Plaintiff Hudson Specialty Insurance Company's Motion for Summary Judgment, doc. #8, is denied and Defendants' Motion for Summary Judgment, doc. #18, is granted.

　　　　　　　　　　　　　　　　　　　　/s/ Sarah W. Hays
　　　　　　　　　　　　　　　　　　SARAH W. HAYS
　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

26

27